Matter of Layne G.G. v Kevin P.D. (2005 NY Slip Op 25233)

Matter of Layne G.G. v Kevin P.D.

2005 NY Slip Op 25233 [8 Misc 3d 857]

April 13, 2005

Mizel, J.

Family Court, Ulster County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, September 07, 2005

[*1]
In the Matter of Layne G.G., Petitioner,
v
Kevin P.D., Respondent.
Family Court, Ulster County, April 13, 2005

APPEARANCES OF COUNSEL

Paul L. Gruner, Public Defender (Stephen F. Brucker of counsel), for respondent. Layne G.G., petitioner pro se.

OPINION OF THE COURT

Marianne O. Mizel, J.
Layne G. filed a violation petition on June 17, 2004, alleging that Kevin D. had failed to pay child support since May 3, 2004. The order concerned Lara J.D., born February 5, 1982, who had turned 21 on February 5, 2003. Support Magistrate Beisel found Mr. D. wilfully failed to pay child support, found him to be $3,638.22 in arrears and directed entry of a money judgment in that amount plus $10 costs, for a total judgment of $3,648.22. Support Magistrate Beisel recommended that Mr. D. be committed to the Ulster County Jail, such commitment to be suspended on condition that Mr. D. finds employment and commences payment on the support obligation prior to any confirmation by this part of the court. Also included in this order, signed September 1, 2004, was a provision that "IT IS ORDERED that the order of support, dated April 5, 1994, is hereby continued." The proceeding was referred to this court for confirmation of the finding of wilfulness and imposition of an appropriate disposition. The wilfulness hearing was conducted on January 21, 2005, at which time the parties agreed on the facts but not on the interpretation of the facts. The court received an accounting prepared by the support collection unit as to Mr. D.'s payment history.
Mr. D.'s attorney argued that Mr. D. cannot be committed to jail for failure to pay support arrears which have been reduced to judgment after the support order has been terminated. In his view, there had to be some order directing payment which was violated and that, once the obligation to pay child support ended, there had to be a separate order directing payment on the arrears. Asked if the language in Support Magistrate Beisel's September 1, 2004 order that the order of support continued was a direction that Mr. D. pay the amount which he had been paying for current support toward the arrears, Mr. D.'s attorney said he thought that that paragraph had just been boiler plate, retained by mistake, because no one thought to take it out since orders [*2]terminating support are so rare.
Family Court Act § 451 provides that Family Court has continuing jurisdiction over any support proceeding "until its judgment is completely satisfied," which would indicate that the court could continue enforcement until the last dollar is paid. Family Court Act § 460 (3) provides that "[t]he relief provided for herein [i.e., entry of a money judgment] [is] in addition to any and every other remedy which may be provided under the law," including the provisions under Family Court Act § 454, which includes commitment. Under the statutes addressing violations of support orders, entry of a money judgment does not preclude commitment.
The question before this court on this case is whether the court can commit a respondent for failure to pay accrued arrears when the underlying order of support is no longer active. While there is no case directly on point, Matter of Arlene W. v Robert W. (70 Misc 2d 1041 [Fam Ct, Schenectady County 1972]) provides some guidance, even though it deals with superceded statutes. There, Family Court terminated the support order when the parties moved out of county but "held the arrears in abeyance" (at 1044). Family Court determined that the significance of holding the arrears in abeyance was that:
"[J]urisdiction was reserved and continued for the purpose of future disposition of the liquidated obligation to pay arrears as the later circumstances of the parties might require. This is obviously what the court intended to do, and what it had the right to do under section 451 of the Family Court Act, which provides that the court has continuing jurisdiction over any support proceeding 'until its judgment is completely satisfied.' " (Id.; see also Matter of Connors v Connors, 103 Misc 2d 288 [Fam Ct, Nassau County 1980].)
Another case, Matter of Frances B. v Robert B. (66 Misc 2d 227 [Fam Ct, Kings County 1971]), also finds that the court, after an order has been terminated, has the power to set arrears which accumulated while the order was in effect. However, that case does not discuss enforcement of those arrears. The case before this court is distinguished from Matter of Carroll v Scott (12 AD3d 670 [2d Dept 2004]). In Carroll, the Second Department said that Family Court did not have subject matter jurisdiction to hear a petition to enforce a money judgment derived from a judgment of divorce because there was no ongoing support proceeding or order granting maintenance or support before Family Court. In that case, it does not appear that the money judgment was related to a support issue. In this case, the money judgment is derived from a Family Court support order and directly concerns the enforcement of a Family Court child support order.
While the power to establish arrears after the order itself has terminated is clear, the power to jail the respondent is not as clear. Family Court Act § 454 (3) and § 461 provide that the issuance of a money judgment does not foreclose the other enforcement remedies. Family Court Act § 454 (3) states that, upon a finding that a party wilfully failed to pay child support, the court has not only those powers provided in section 454 (2) but also additional powers set out in section 454 (3). Included in the remedies available to the court, Family Court Act § 454 (2) provides:
"(a) the court shall enter a money judgment under section four hundred sixty of this article; and
"(b) the court may make an income deduction order for support enforcement under section fifty-two hundred forty-two of the civil practice law and rules . . . ."
[*3]
The CPLR states that the court can order a judgment debtor who is supporting other children, as Mr. D. is, to pay up to 55% of his disposable income toward the money judgment (CPLR 5242 [c] [2] [i]). Mr. D. has not raised objection to the Support Magistrate's September 1, 2004 order on the basis that the amount ordered to be paid exceeds the amounts permissible under the CPLR. Clearly, upon a finding of violation of a child support order, this court not only can issue a money judgment fixing arrears but can also enter an order directing payment of those arrears. The additional remedies available under Family Court Act § 454 (3) (a) upon finding that the violation was wilful include commitment to jail for up to six months.
Committing people to jail for failure to pay child support has been distinguished from being a debtor's prison on the basis that commitment is imposed for wilful disobedience of the court's order and not for failure to pay a civil debt (Fuller v Fuller, 31 AD2d 587 [3d Dept 1968]). Determination of whether the "wilfulness" was Mr. D.'s failure to pay before or Mr. D.'s failure to pay after Lara turned 21 is not crucial to this court's authority to commit Mr. D. for his failure to pay. If the Support Magistrate's wilfulness finding was that Mr. D. was able to pay the support when it accrued, i.e., when the support order was active, this court would still have the authority to commit Mr. D. to jail for wilfully not paying it when it was due. Otherwise, the payor could escape jail by dragging his heels until the child aged out.
If the Support Magistrate's wilfulness finding was that Mr. D. did not pay the amount of his child support order toward arrears after the child aged out, the wording in the September order that "the order continues" becomes crucial. No one objected to the wording of that order, and the inclusion of that phrase became controversial only in hindsight. The behavior of the parties indicates that they understood it to mean that the same amounts would continue to be paid and would be credited on arrears. The accounting prepared and presented by the support collection unit shows that the bulk of arrears accrued during the period from 1995 to 2002. At the end of 2002, Mr. D. was $12,712.38 in arrears. Because Lara turned 21 on January 31, 2003, only $675 current child support was due in 2003 while $7,319.16 was deducted from his pay, $6,644.16 of which was applied to his arrears. Money continued to be deducted in 2003 and 2004 from Mr. D.'s paycheck and from unemployment after Lara turned 21 and Mr. D. did not object to the continued deductions. Under the reasoning advanced by Mr. D.'s attorney, there would have been no reason for these deductions to have continued. Failure to follow the Support Magistrate's September 1, 2004 direction to pay the equivalent amount formerly paid on child support, to now be applied to arrears, is a failure to obey an order of the Family Court. This court can commit Mr. D. to jail for wilfully failing to pay on arrears after Lara turned 21.
At the time Ms. G. filed her violation petition against Mr. D., the mother of Mr. D.'s other children, Lisa L., also filed a violation petition against Mr. D., alleging that he had failed to pay support for their two children for an extended period of time. This court found Mr. D. to have wilfully violated the order for support of Ms. L.'s children and committed him to the Ulster County Jail for a period of six months with a purge amount of $22,251.25. Wilful violation of Ms. D.'s order, which is separate from the order requiring payment for other children by a different mother, is contempt of a different order. Failure to pay for child A under order A is independent from failure to pay for child B under order B and can be dealt with independently, even if the failures occurred during the same time period. Because Mr. D. violated two independent orders, any order of commitment for the two separate violations can be served [*4]separately, i.e., consecutively rather than concurrently.
However, this court determines it is appropriate for Mr. D. to serve the six-month commitment for violating the G. order concurrently with the time he is serving the L. violation, with a separate purge amount on the G. order of $3,648.22. According to the support collection accounting on each file, the last support check received by income execution was received on November 3, 2003; payments beginning November 10, 2003 and ending May 3, 2004 were received by execution on unemployment insurance benefits. Support Magistrate Beisel based his finding of wilful failure to pay upon a finding that Mr. D. had not proven adequate efforts to find replacement employment. Keeping Mr. D. in jail for a total of 12 months, six months on each violation, served consecutively, does not further Mr. D.'s search for employment. The court hopes that by serving six months in jail, unless shortened by payment of the purge amount, the court will impress upon Mr. D. how seriously the court takes its directions that children be supported and that that support is determined by earning capacity, not actual income. Any further violation of either order to pay support can result in further orders of commitment.